UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:07-CV-80680-RYSKAMP/VITUNAC

INFINITY GLOBAL LLC, a
Delaware limited liability company,

       Plaintiff,

vs.

RESORT AT SINGER ISLAND
PROPERTIES, INC., a Florida corporation,
and
WCI COMMUNITIES, INC.,
a Delaware corporation,

       Defendants.

_____/

**DEFENDANT RESORT AT SINGER ISLAND PROPERTIES, INC.'S
MOTION TO DISMISS THE COMPLAINT,
REQUEST FOR ATTORNEYS FEES
AND INCORPORATED MEMORANDUM OF LAW**

Defendant Resort at Singer Island Properties, Inc. ("Resort"), pursuant to Fed.R.Civ.P.

12(b)(6) and S.D.L.R. 7.1, moves the Court to dismiss Plaintiff's Complaint with prejudice.  The

grounds for this motion are stated with more particularity in the following Memorandum of Law.

**MEMORANDUM OF LAW**

**Introduction**

On September 30, 2004, Plaintiff agreed to speculatively invest in two luxury

condominium units from Resort, which are the subject of this lawsuit.  Plaintiff, a sophisticated

real estate investment LLC entered into two contracts outlining in detail the nature of the

property being sold and the terms of the purchase.  By signing these contracts, Plaintiff

acknowledged that Resort would be damaged by its failure to close, and expressly agreed to

12143233.1

forfeit its deposit, with interest, to pay for this damage.  Plaintiff has refused to close on the condominium purchases.  It therefore forfeited the deposits to Resort, as agreed.  Nonetheless, on July 31, 2007, Plaintiff filed this action seeking to avoid the legal effect of the contracts it willingly signed.  Although the complaint contains class allegations, Plaintiff has not complied with the rules concerning class actions; therefore, this action cannot be considered a putative class action.

## I.   ALLEGATIONS IN THE COMPLAINT

Almost three years have passed since Plaintiff, a real estate speculation LLC, agreed to purchase multi-million dollar condominiums from Resort.   After refusing to close on the purchases due to the downturn in the Florida condominium market and realizing that it would be required to pay its deposits as damages for these breaches of contract, Plaintiff now alleges that it was somehow misled at the time it entered into the contracts.

Specifically, Plaintiff alleges that Resort, acting as an "agent or alter ego of WCI," violated the Interstate Land Sales Full Disclosure Act ("ILSA"), 15 U.S.C. § 1701 *et seq.*, by committing various misleading and deceptive acts during the condominium sales transaction nearly three years ago.  Compl. ¶¶ 21-69.  Plaintiff alleges that "Resort/WCI" violated ILSA by 1) charging interest during a "cure" period after the purchaser breaches the sales contracts by failing to close; 2) stating in the contracts that an affiliated title insurance company charges the "minimum rate promulgated by the Florida Department of Insurance"; 3) requiring a purchaser to sign a release in connection with the refund of the purchaser's deposit; 4) providing Plaintiff with an updated estimated assessment budget showing that Plaintiff would be charged the same total assessments as reflected in the original estimated assessment budget;  5) delivering one

12143233.1                                        2

page of a fifty-four page property report to Plaintiff one week after the fifty-three pages had been given to it; and 6) enforcing the liquidated damages provision of the contracts. Compl. ¶¶ 21-69.

Plaintiff also alleges that the exact same conduct, all of which occurred in the context of Plaintiff's transaction with Resort, violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). Compl. ¶¶ 70-99. Plaintiff asserts this FDUTPA claim only against WCI. *Id.* at ¶ 81.

Interestingly, Plaintiff does not allege that it was charged or actually paid any interest at all for the period after he breached the contracts by refusing to close. Plaintiff does not, and cannot, allege that it actually purchased any title insurance with respect to the contracts at issue in this case, since it did not close on the purchase of those condominiums. Nor does Plaintiff allege that it, or anything else, was actually charged a greater amount for assessments than the assessments listed in the estimated budget.

There are also no allegations in the Complaint explaining why Plaintiff only now asserts that these terms in the contracts—which were in the contracts at the time it signed the contracts nearly three years ago—were "misleading." Plaintiff had ample opportunity to read the contracts, understand their terms, and object or rescind the contracts. Plaintiff did not do so and cannot now seek to avoid its obligations under the contracts simply because there has been a downturn in the Florida condominium market and it does not want to forfeit its deposits as it agreed in the contracts.

Although there are no allegations in the Complaint that Plaintiff had any contact whatsoever with WCI during its transaction, Plaintiff purports to bring claims against WCI on behalf of a class of condominium purchasers. Compl. ¶¶ 15-20.

## II.   STANDARD ON MOTION TO DISMISS

The United States Supreme Court recently clarified the standard for motions to dismiss brought under Fed. R. Civ. P. 12(b)(6) in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41 (1957)).

The *Twombly* Court expressly rejected the "no set of facts" standard previously relied upon by many federal courts, holding that "[a]fter puzzling the profession for 50 years, [the 'no set of facts' standard] has earned its retirement" and is "best forgotten." *Id.* at 1969. The Court held that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a *formulaic recitation of the elements of a cause of action will not do*. Factual allegations must be enough to raise a right to relief *beyond a speculative level*." *Id.* at 1964-1965 (internal quotations, alterations, and citations omitted). Rather, *Twombly* requires that a plaintiff allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. Something beyond "the mere possibility" of a claim must be alleged "lest a plaintiff with 'a largely groundless claim' be allowed to 'take up time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Id.* at 1966.

The Complaint here fails to satisfy the *Twombly* standard with regard to any substantive count asserted and, as such, the Complaint should be dismissed.

## III.   ARGUMENT

### A.   Plaintiff Fails To State An ILSA Claim

#### 1.   Plaintiff's Claims Under 15 U.S.C. § 1703(d) Are Barred By A Two-Year Limitation Period

In passing ILSA, 15 U.S.C. § 1701 *et seq.*, the Senate Special Committee on Aging in 1964 wanted to "compensate purchasers, who may have lost their life savings by investing in fraudulent land sales." *Fitzgerald v. Century Park, Inc.*, 642 F.2d 356, 358 (9th Cir. 1981). One

way ILSA accomplishes this purpose is by requiring that purchasers of real estate be afforded certain remedies upon their failure to close on a purchase of property covered by the Act.

Specifically, section 1703(d) provides that a contract that does not contain certain remedial provisions for the benefit of the purchaser "may be revoked at the option of the purchaser or lessee for two years from the date of the signing of such contract or agreement." If a purchaser does not assert his revocation rights under section 1703(d) within two years of signing his contract, its section 1703(d) claim will be dismissed. *Collins v. Keller*, 969 S.W.2d 621, 624 (Ark. 1998); *Orsi v. Kirkwood*, 999 F.2d 86, 89 (4th Cir. 1993) (construing identical language in section 1703(c).

Plaintiff's section 1703(d) claim is time-barred. Plaintiff's contracts were executed on September 30, 2004. In order to bring a timely claim under section 1703(d), it would have had to obtain rescission of its contract on or before September 30, 2006. However, Plaintiff never sought nor requested rescission within two yeas of its contract date, and the Complaint fails to allege otherwise. Moreover, Plaintiff did not file this untimely action until July 31, 2007. Therefore, Plaintiff's section 1703(d) claims are barred under the two-year limitation period in section 1703(d) and must be dismissed.

### 2.    Plaintiff Fails To State A Claim For Relief Under 15 U.S.C. § 1703(a)

ILSA "is an antifraud statute utilizing disclosure as its primary tool, much like the securities laws. " *Winter v. Hollingsworth Properties,* 777 F.2d 1444, 1447 (11th Cir.1985). Specifically, "Congress desired to protect purchasers from unscrupulous sales of undeveloped home sites, frequently involving out-of-state sales of land purportedly suitable for development but actually unsuitable such as land under water or useful only for grazing." *Paniaguas v. Aldon Companies, Inc.*, No. 2:04-CV-468-PRC, 2005 WL 1983859, *4 (N.D. Ind. Aug. 17, 2005).

Thus, the disclosure requirements of ILSA are intended to protect a purchaser from unknowingly purchasing land that is undesirable or unsuitable for the uses the purchaser intends.

In furtherance of this goal, section 1703(a) requires developers to provide purchasers with a printed property report meeting certain requirements in advance of the signing of the contract for the purchase of real estate.  15 U.S.C. § 1703(a)(1)(B) (stating that it is unlawful to fail to provide a property report complying with section 1707 of ILSA); 15 U.S.C. § 1703(c) (providing a remedy of rescission for the failure to provide a property report).  ILSA also prohibits developers from making untrue statements, or omitting material information, about the undeveloped land they are selling.  It is clear from the legislative purpose of the Act and its express terms that the focus of the Act is misrepresentations concerning the property itself.

Specifically, section 1703(a)(1)(C) prohibits a developer from selling "any lot where any part of the statement of record or the property report contained an untrue statement of material fact or omitted to state a material fact required to be stated therein pursuant to sections 1704 through 1707 of this title or any regulations thereunder."   To state a claim for relief under section 1703(a)(1)(C), Plaintiff must therefore allege either an untrue statement in a property report, or that the property report omitted a material fact required to be included pursuant to the statute or regulations.  *Paniaguas*, 2005 WL 1983859, at *4 ("In order to prove an ILSA claim, . . . a plaintiff must show that a defendant made an untrue statement or omitted a material fact from a property report in violation of 15 U.S.C. § 1703(a)(1) . . .").

Similarly, section 1703(a)(2)(B) prohibits

> [A]ny untrue statement of material fact, or any omission to state a material fact necessary in order to make the statements made (in light of the circumstances in which they were made and within the context of the overall offer and sale or lease) not misleading *with respect to any information pertinent to the lot or subdivision.*

(Emphasis supplied).  To state a claim under section 1703(a)(2)(B), a Plaintiff must allege that "a defendant made an untrue statement or omitted a material fact in a defendant's dealings with purchasers." *Id.*

Plaintiff alleges that Defendants violated section 1703(a) of ILSA by 1) stating that its affiliated title insurance company charges the "minimum rate promulgated by the Department of Insurance" both in the contract and in the property report, 2) giving Plaintiff an estimated assessment budget that reflected the same charges as the assessment budget in the condominium prospectus; and 3) delivering one page of a fifty-four page property report to Plaintiff one week after the fifty-three pages had been given to it.  These allegations are insufficient to sustain a claim under ILSA.[1]

### a.     Resort's Representations Concerning Title Insurance Rates Are Not Untrue Or Misleading

Plaintiff alleges that it was "misled by the written contract into believing that the rate charged by [Defendant's] affiliated business is the bare minimum available charge as allowed by Department of Insurance."  Compl. ¶ 46.  However, the statement that Resort's affiliate, First Fidelity Title ("FFT"), charges the "minimum rate promulgated by the Department of Insurance" is not untrue, nor did Resort omit any facts regarding title insurance rates necessary to make its disclosure concerning title insurance rates not misleading.

The Florida Financial Services Commission (the "Commission") sets the specific rates to be charged for title insurance, including the amount to be retained by the insurer and agent. § 627.782(1), Fla. Stat. (2007) (stating that the Commission "must adopt a rule specifying the

---

[1] To the extent Plaintiff's claims are based on section 1703(a)(1)(C), which prohibits a developer from selling or leasing "any lot where any part of the statement of record or the property report contained an untrue statement of a material fact or omitted to state a material fact requires to be stated therein pursuant to section s 1704 through 1707 of this title or any regulations thereunder," Plaintiff has not alleged that the property report failed to comply in any respect with the disclosures in section 1704 through 1707.  Therefore, Plaintiff's claim under 1703(a)(1)(C) can only succeed if Plaintiff can show an <u>untrue</u> statement, which, as described below, he cannot.

premium to be charged in this state by title insurers for the respective types of title insurance contracts and, for policies issued through agents or agencies, the percentage of such premium required to be retained by the title insurer which shall not be less than 30 percent"). It is illegal for any title agent to charge an amount different than those set in the rate schedule above. § 627.78(1), Fla. Stat. (stating that "[a] person may not knowingly quote, charge, accept, collect, or receive a premium for title insurance other than the premium adopted by the Commission"). The rates adopted by the Commission are listed in Florida Administrative Code Rule 69O-186.003, which provides that the premium charged for an original owner's title insurance policy "shall be:"[2]

|  | Per Thousand [of Insurance][3] | Minimum Insurer Retention |
|---|---|---|
| From $0 to $100,000 of liability written | $5.75 | 30% |
| From $100,000 to $1 million, add | $5.00 | 30% |
| Over $1 million to and up to $5 million, add | $2.50 | 35% |
| Over $5 million and up to $10 million, add | $2.25 | 40% |
| Over $10 million, add | $2.00 | 40% |

Rule 69O-186.003(1)(a)(1) also specifies certain minimum premiums to be charged:

> b. The minimum premium for all conveyances except multiple conveyances shall be $100.

> c. The minimum premium for multiple conveyances on the same property shall be $60.

---

[2] The contract attached to the complaint makes it clear that owners' title insurance policy is at issue.

[3] The Rule specifies that "[t]o compute any insurance premium on a fractional thousand of insurance (except as to minimum premiums), multiply such fractional thousand by the rate per thousand applicable, considering any fraction of $100.00 as a full $100.00."

> 2. In all cases the owner's policy shall be issued for the full insurable value of the premises.

(emphasis supplied).

Although Plaintiff claims that it was mislead because it could have paid less for title insurance if it had received a rebate, Plaintiff expressly acknowledges that a rebate is not actually a part of these rates promulgated by the Department:  "[a] prospective purchaser could have obtained a rate less than the amount promulgated by the Florida Department of Insurance with a title company not affiliated with [Defendants] by receiving a rebate of the title agent's portion of the risk premium." Compl. ¶ 43.

The Florida Supreme Court's decision in *Chicago Title Insurance Co. v. Butler*, 770 So. 2d 1210 (Fla. 2006), confirms that the rebate referred to by Plaintiff is not part of the "minimum rate" set forth in Rule 69O-186.003.   In *Butler*, the Florida Supreme Court declared unconstitutional certain portions of the Insurance Code which prohibited title insurance agents from rebating any portion of the premium rates they received to repeat customers.  Thus, the Court held that once the rates set by the Commission are properly charged, an agent is free to attempt to negotiate with that agent to have its portion of that rate—which is set by rule at seventy percent of the premium charged—returned by rebate.  Such a rebate is not a "rate" specifically set by any statutory or regulatory authority, and a title insurance agent is not obligated by law to offer a rebate.  There is in fact a minimum rate promulgated by the Commission for the premium to be charged for title insurance—of which any agent rebate is not a part—and the statements regarding the title insurance rates charged by FFT are therefore true.

No further disclosures were required in order to make the statement that FFT charges the "minimum rate as promulgated by the Department of Insurance" not misleading "in light of the

circumstances in which they were made and within the context of the overall offer and sale or lease." § 1703(a)(2)(B).

As a preliminary matter, there is no general duty to disclose the lowest possible prices for title insurance, especially in this type of an arms-length transaction where Defendant is not even an insurance company. *See Oden v. First Floridian Auto & Home Ins. Co.*, No. 02-CA-3244-JT, slip op. at 2 (Fla. Cir. Ct. Dec. 5, 2003) (finding "there is no duty to disclose to Plaintiff or other customers the lowest available prices for automobile insurance, therefore, this Court should dismiss [the] action"); *see also Griggs v. The Progressive Corp.*, No. CI 2003-200, slip. op. at 3 (Miss. Cir. Ct. May 18, 2004) ("Therefore, to the extent [p]laintiff's fraud claim is based upon a mere concealment or nondisclosure of the lowest price [for insurance] by the Progressive defendants, Plaintiff has failed to state a claim upon which relief can be granted"); *Smith v. The Progressive Corp.*, No. 2003-0078, slip. op. at 3 (Miss. Cir. Ct. May 14, 2004) (holding that because "no fiduciary duty exists between a seller of insurance and a purchaser . . . there was no affirmative duty on the part of the Defendants to disclose to the Plaintiff that she was not receiving the lowest quote").

Moreover, the contract specifically discloses that better title insurance prices might be available from non-affiliated entities:

> You are NOT required to use the listed provider(s) as a condition for the purchase, sale or refinance of the subject property. THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVALIABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.

This provision makes clear that Plaintiff was made aware of the possibility that better prices were available and also that Plaintiff bore the burden of investigating the availability of lower

prices for title insurance, including the availability of rebates. *Price v. Owens-Illinois Development Corp.*, 646 F.Supp. 314, 318 (M.D. Ga. 1986) (granting summary judgment on purchaser's claim that developer's failure to disclose that restrictive covenants could be amended was an omission actionable under ILSA where the restrictive covenants themselves stated that they could be amended and "[t]he nonmisleading character of this whole transaction is made even more clear by the repeated notices to plaintiff that he should study the restrictive covenants"); *Cook v. Deltona Corp.*, 753 F.2d 1552, 1560 (11th Cir. 1985) (directed verdict affirmed for developer on purchaser's claims that he did not understand the true nature of the property he bought where the purchaser "knew, at the time of purchase, that the lot for which he was contracting was underwater"); *cf. Fillmore v. Dept. of Pub. Utils.*, 257 N.E. 2d 427, 428 (Mass. 1970) ("It is not unreasonable to place the burden on the customer to see that he is getting the lowest rate to which he is entitled."). Plaintiff's claim should therefore be dismissed.

### b. Plaintiff's Conclusory Allegation That The Budget Was False Fails Under *Twombly*

Under the new *Twombly* standard, a plaintiff must be able to plead his or her way out of "neutral territory" in order to resist a motion to dismiss. Where, as here, the <u>facts pled</u>, as opposed to the <u>legal conclusions asserted</u>, leave the possibility of legal conduct as open as the possibility of conduct giving rise to liability, the complaint should be dismissed. *Twombly*, 127 S.Ct. 1255 (2007) (internal quotations and citations omitted) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief beyond a speculative level . . .").

In *Twombly*, plaintiffs brought a putative class action alleging that a group of telephone carriers called ILECs had engaged in a price fixing conspiracy in violation of the Sherman Act

by refusing to deal on certain terms with competitors called CLECs and by refusing to compete in one another's territories.  Substantively, the Sherman Act prohibits only <u>actual agreements</u> on these matters, and does not prohibit so-called "conscious parallelism," in which groups of competitors, aware of one another's positions, act similarly in the market place.  That said, conscious parallelism can be submitted as circumstantial evidence of an illegal actual agreement. The *Twombly* plaintiffs alleged numerous examples of consciously parallel behavior, and they <u>also</u> alleged in conclusory fashion, <u>on information and belief</u>, the existence of an illegal actual agreement.  However, the *Twombly* plaintiffs could not allege specific facts, other than examples of conscious parallelism, that suggested any illegal actual agreement.  The Supreme Court held that, in these circumstances, the complaint remained in "neutral territory" and should be dismissed:

> A statement of parallel conduct, even conduct consciously undertaken, needs some setting suggesting the agreement necessary to make out a § 1 claim: without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory.  An allegation of parallel conduct is thus much like a naked assertion of conspiracy in a § 1 complaint: it gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of "entitle[ment] to relief."

<u>Twombly</u>, 127 S.Ct. at 1266.

The pleading problem identified in *Twombly* is exactly analogous to the problem with the present Complaint's missing allegations.

Just as the *Twombly* plaintiffs' only <u>factual</u> allegations set forth instances of legal conscious parallelism, the Complaint's only <u>factual</u> allegations are that the estimated budget provided in the condominium prospectus and the assessment budget included prior to closing were the same.  Plaintiff concludes, based on information and belief, that the budget is not "an

honest assessment" of the actual assessment costs purchasers will pay. In *Twombly*, the alleged conscious parallel conduct left open the possibility that there had <u>been no</u> illegal actual agreement, where actual agreement was the *sine qua non* of Sherman Act liability. Similarly, the missing factual allegations of the Complaint leave open the possibility that the budget provided at closing was in fact a good faith, true, and accurate estimate of assessments, in compliance with Defendants' obligations under section 718.504, Florida Statutes.[4]  Under these circumstances, there is no basis for concluding that the budget was untrue, much less that it was "misleading." Plaintiff fails to meet the pleading requirements of *Twombly*, and his claims must therefore be dismissed.  *See Brocker v. Norwegian Cruise Line Limited*, No. 06-23006-CIV, 2007 WL 2155648 (S.D. Fla. July 26, 2007) (dismissing complaint for failure to comply with *Twombly*).

    c.  **Providing One Page Of A Fifty-Four Page Document One
Week Apart Is Not A Violation Of ILSA**

   The underlying purpose of the disclosure requirements of ILSA is that "prior to the purchase the buyer must be informed of facts which would enable a reasonably prudent individual to make an informed decision about purchasing the security or the property." *Paquin*

---

[4] Moreover, the Florida Legislature recently enacted a clarification of existing law stating that changes in assessment budgets due to expenses beyond the control of the developer are not material, adverse changes giving rise to a right of rescission. *See* § 718.504(21)(e), Fla. Stat. (2007) (stating that "subsequent increased amounts of any item included in the association's estimated budget that are beyond the control of the developer shall not be considered an amendment that would give rise to rescission rights set forth in s. 719.503(1)(a) or (b), nor shall such increases modify, void, or otherwise affect any guarantee of the developer contained in the offering circular or any purchase contract"). This statute suggests that any change to the budget due to expenses such as insurance and property taxes should not be considered material under ILSA as well.

Notably, Plaintiff did not attach to its Complaint the condominium documents, the condominium prospectus, copies of the estimated budgets, or any of the other documents referred to in relation to the assessment. Nevertheless, "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). "The full consideration of such documents is necessary lest a court be subject to possibly evasive tactics by plaintiffs that may selectively quote from a document not attached to its complaint and thus blindfold the court and prevent a proper consideration of the true merits of the pleadings." *Lasker v. New York State Elec. & Gas Corp.*, 1995 WL 867881 *4 (E.D.N.Y. Aug. 22,1995). Therefore, the Court should rely upon the language in the condominium documents in considering whether Plaintiff's claims are subject to dismissal.

*v. Four Seasons of Tennessee, Inc.*, 519 F.2d 1105, 1109 (5th Cir. 1975).[5] The test of materiality is whether a reasonable investor might have considered the omitted fact or erroneous statement as important in making a decision. *Id.* In furtherance of this goal, ILSA requires that a developer provide a purchaser with a property report containing certain information about the property before the purchaser signs the contract to ensure that purchasers have all material information with respect to a land sale transaction. Where a developer substantially complies with the purposes of ILSA by providing a property report, a developer's failure to perfectly comply with de minimis technical requirements will not give rise to a claim under ILSA. *Las Campanas Ltd. Partnership v. Pribble*, 943 P.2d 554, 558 (N.M. App. 1997).

In *Las Campanas*, a purchaser sought to rescind his land purchase contract because the developer failed to attach to the property report a receipt acknowledging that he had received the property report as required by ILSA. *Id.* at 556. The court held that the purchaser was not entitled to rescind his contract because the developer "substantially complied with the intent of the regulation." *Id.* at 558. The court reasoned that "[w]e are not persuaded that ILSFDA or its implementing regulations entitle [the purchaser] to rescind the contract solely because of [the developer's] failure to comply with the regulation's technical requirement of physically attaching the receipt to the property report or because of discrepancies in the dates of the documents." The court also pointed out that the purchaser received the property report before he signed the contract; that the developer did not engage in any misleading practice or device; and that there was a warning on the property report in large letters to "READ THIS PROPERTY REPORT BEFORE SIGNING ANYTHING." *Id.* at 526. The court concluded that the technical violation of the statute did not provide grounds for rescission under ILSA.

---

[5] Under *Bonner v. City of Pritchard, Alabama*, 661 F.2d 1206 at 1207 (11th Cir. 1981), all Fifth Circuit cases decided before 1981 are binding on federal courts within the Eleventh Circuit.

Here, Plaintiff alleges that Resort violated ILSA by providing a single page of a fifty-four page property report a few days after it signed the Contract. This claim is without merit. Plaintiff had access to all material information with respect to the land purchase before it signed the Contract: Plaintiff acknowledges that it received a property report on September 15, 2004, the day it signed the Contract. Moreover, the property report states in large type on its cover, "READ THIS PROPERTY REPORT BEFORE SIGNING ANYTHING." Plaintiff was therefore on notice of the nature of the disclosures in the property report, and there is no basis for concluding that a reasonable investor would consider the receipt of a single page of the property report a few days after signing the contract to be "important" in making the decision to purchase a multi-million dollar property. By providing fifty-three pages of a fifty-four page property report to Plaintiff before it signed its contract, Resort substantially complied with the intent of ILSA, and Plaintiff has therefore failed to state a claim for relief.

Because Plaintiff has failed to allege the existence of any untrue material statement or misleading omission in the property report or otherwise, or any other basis for a claim under section 1703(a), his claims under section 1703(a) must be dismissed.

**B.      Plaintiff's FDUTPA Claim Should Be Dismissed**

Plaintiff asserts a claim under FDUTPA against WCI only. Resort hereby adopts the arguments laid out in WCI's Motion to Dismiss for the reasons why the FDUTPA claim must be dismissed.

**C.      The Contract Cannot Be Declared Void**

As a general rule, "parties are free to 'contract-out' or 'contract around' state or federal law with regard to an insurance contract, so long as there is nothing void as to public policy or statutory law about such a contract." *Green v. Life & Health of America*, 704 So.2d 1386,

12143233.1                                       15

1390 (Fla. 1998).   The reason for this rule is that contracting parties may not "stipulate for iniquity" and public welfare dictates that "each contract must have a lawful purpose." *Wechsler v. Novak*, 26 So.2d 884, 887 (Fla. 1946).

Public welfare does not demand that every contract that may run afoul of a particular statute is entirely void.   Rather, "a contract in violation of a statute, which statute does not expressly declare such contract void, will be enforced unless there is some other indication within the statute of legislative intent to invalidate such contract." *Talco Capital Corp. v. Canaveral International Corp.*, 225 F.Supp. 1007 (S.D. Fla. 1965), *aff'd* 344 F.2d 962 (5th Cir. 1965); *see also Palm Bay Tower Corp. v. Brooks*, 466 So. 2d 1071 (Fla. 3d DCA 1985). Therefore, a court will not declare a contract void where there is no indication, either in the statute itself or in its legislative history, that the remedy for a violation of that statute is to void contracts. *Trotter v. Ford Motor Credit Corp.*, 868 So. 2d 593, 594 (Fla. 2d DCA 2004).

In *Trotter*, 868 So. 2d at 594, a car purchaser sued the dealer who sold him the car and the assignee of his financing contract, alleging that he was entitled to restitution of the amount he paid under the financing contract.   In support of his restitution claim, the purchaser asserted that the financing contract was void under Florida's public policy because it violated several statutes. *Id.*   The Second District Court of Appeal held that the purchaser failed to state a claim for restitution. *Id.*   The court reasoned that "[n]othing in the language of the Motor Vehicle Retail Sales Finance Act, or in Florida case law, would render the entire finance contract void because of the violation of chapter 520." *Id.*   The court pointed out that the plaintiffs could not "circumvent their inability to state a cause of action against [the assignee of the financing contract] merely by claiming any violation renders the contract void." *Id.*

12143233.1                                             16

Here, Plaintiff claims that it has been damaged by WCI's failure to return its deposit because the contract was "void *ab initio*, as it was illegal under ILSA and FDUTPA." Nothing in ILSA, or its legislative history, or case law, indicates that Congress intended that all contracts that violate ILSA are void. Rather, ILSA provides very strict time limits on seeking a remedy of rescission. Specifically, claims for rescission must be made within two years of the execution of the sales contract. *See e.g.* 15 U.S.C. § 1703(c), (d). This demonstrates a legislative intent to limit the remedy of declaring a contract void in violation of ILSA to two years from the time the purchase contract was signed. Plaintiff filed this action more than two years after signing his contract with Resort and has not alleged that it timely asserted any right of revocation under ILSA. Therefore, any alleged failure to comply with ILSA cannot render the entire contract void, and Plaintiff is not entitled to the relief it seeks.

## IV. ATTORNEYS' FEES

WCI is entitled to recover its attorneys' fees against Plaintiffs pursuant to paragraph 25.6 on page 11 of the Contract, which states: "In connection with any alternative dispute resolution proceedings or litigation, including appellate proceedings, arising out of this Contract, the prevailing party shall be entitled to recover attorneys' fees and costs."

**CONCLUSION**

WHEREFORE, Resort respectfully requests that the Court dismiss the Complaint with prejudice, award it the attorneys fees it incurred in this case, and grant such other and further relief as the Court deems appropriate.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on September 11, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document

12143233.1

17

is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

**CARLTON FIELDS, P.A.**
222 Lakeview Ave., Suite 1400
West Palm Beach, FL 33402-0150
(561) 659-7070 Telephone
(561) 659-7368 Facsimile
E-mail: jianno@carltonfields.com

By: /s/ Joseph Ianno, Jr.
       Joseph Ianno, Jr.
       Florida Bar No. 655351
       Kathryn Christian
       Florida Bar No. 27594

Attorneys for Resort at Singer Island Properties, Inc.

## SERVICE LIST

James D. Ryan, Esq.
jdr@attyryans.com
Ryan & Ryan Attorneys, P.A.
631 U.S. Highway One, Suite 100
North Palm Beach, FL  33408
Telephone:  (561) 841-3420
Fax:  (561) 841-3424
Attorney for Plaintiff Infinity Global LLC

Timothy P. O'Neill, Esq.
tpo@attyryans.com
Ryan & Ryan Attorneys, P.A.
631 U.S. Highway One, Suite 100
North Palm Beach, FL  33408
Telephone:  (561) 841-3420
Fax:  (561) 841-3424
Attorney for Plaintiff Infinity Global LLC